**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| RICHARD KLINA | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| THE SOUTHEASTERN PENNSYLVANIA | : | |
| TRANSPORTATION AUTHORITY | : | NO. 10-5106 |

**MEMORANDUM**

**Baylson, J.**                                                              **October 3, 2011**

Plaintiff Richard Klina ("Plaintiff") commenced this action for employment

discrimination, in violation of the Age Discrimination in Employment Act of 1967

("ADEA"), ¤ 2 et seq., 29 U.S.C.A. ¤ 621 et seq., and the Pennsylvania Human Relations Act

("PHRA"), 43 Pa. Stat. Ann. ¤ 951 et seq., against his employer, the Southeastern Pennsylvania

Transportation Authority ("SEPTA" or "Defendant"). Presently before the Court is Defendant's

Motion for Summary Judgment (ECF No. 17). After oral argument, a review of the record, and

upon consideration of Plaintiff's supplementary materials provided at the request of the Court,

and for the reasons that follow, the Court will grant summary judgment to Defendant.

**I.    Factual History**

**A.    Plaintiff's Employment with SEPTA**

Richard Klina is a fifty-seven year-old Assistant Director of Railroad Services at

SEPTA's Rail Transportation division. Def.'s Facts at ¶ 1 (; Pl.'s Resp to Facts at ¶ 1. Plaintiff

began working for SEPTA on January 1, 1983 and was promoted to "Deputy Director" or

"Assistant Director" in 1995. Def.'s Facts at ¶¶ 16-17; Pl.'s Resp to Facts at ¶¶ 16-17. According

1

to SEPTA, it calls an employee in Plaintiff's position a SAM employee, which stands for "Supervisory, Administrative, or Management" employee and indicates an employee who is not in a collective bargaining unit. Def.'s Facts at ¶ 20 n. 2.

     **B.**     **SEPTA's Salary Grade Policies**

     SEPTA has a salary structure based on "grades and ranges." Def.'s Facts at ¶ 6; Pl.'s Resp to Facts at ¶ 6; 2005 SAM Compensation Policy, Def.'s Ex. 3. According to SEPTA's 2005 SAM Compensation Policy document, SEPTA considers all jobs within a salary grade to be of equal value and have the same pay range. Def.'s Facts at ¶ 7; Def.'s Ex. 3 at 1. Each pay range has a minimum, midpoint, and maximum. Def.'s Facts at ¶ 8; Pl.'s Resp to Facts at ¶ 8; Def.'s Ex. 3 at 1-3. Between 1995 and 2000, Plaintiff, as all Deputy or Assistant Directors in Rail Transportation, was a "grade 14 Deputy Director." Def.'s Facts at ¶ 9; Pl.'s Resp to Facts at ¶ 9.

     In 2001, at the advice of an outside consultant, the Hay Group, SEPTA restructured the grade numbering system, which resulted in the conversion of grade 14 positions to grade 41 and grade 13 to grade 40. Def.'s Facts at ¶ 10-11; Pl.'s Resp to Facts at ¶ 10-11; October 2001 Leary Memorandum, Def.'s Ex. 4; 2001 Consultant Compensation Study at 3, Def.'s Ex. 5. Of 671 positions evaluated, 40 positions were upgraded to fall into a grade with a higher midpoint salary, 141 positions were downgraded to a grade with a lower midpoint salary, and 490 positions remained the same. Def.'s Facts at ¶ 13; Pl.'s Resp to Facts at ¶ 13; Leary Memorandum at 3; Def.'s Ex. 4. The downgrading of positions affected approximately 700 employees. Def.'s Facts at ¶ 13; Pl.'s Resp to Facts at ¶ 13; Compensation Study at 26, Def.'s Ex. 5.

     At the time that SEPTA implemented the new grade numbering system, it informed employees that it had "decided not to reduce the salary of any individual employee at SEPTA as

a result of a 'downgrade.'"  Leary Memorandum at 3; Def.'s Ex. 4.  In the case of employees in positions being downgraded, SEPTA implemented a policy of grandfathering those employees at their current salary. Def.'s Facts at ¶ 13; Sept. 10, 2001 Memorandum at 1; Def.'s Ex. 7. These grandfathered employees were identified by a "G" in their job code.  Id.

SEPTA explains the grandfathering policy in its 2005 SAM Compensation Policy manual as follows:

> Grandfathered Incumbent/Grade:
>
> Subject to the implementation policy of the HayGroup [sic] study results in 2001, certain  positions were downgraded relative to peer positions. With this action, SEPTA decided  not to reduce the salary or grade of any individual employee as a direct result of the HayGroup [sic] study downgrading the position grade. Employees remained in "personal" grades higher than the evaluated position grade. For example: the position of Transportation Manager, position number 2094, was evaluated to be grade 37. At that time, all employees within this classification were placed in grade 38, and employees were assigned the position number G2094.

Compensation Policy at 2, Def.'s Ex. 3; see Def.'s Facts at ¶ 20.

### C.    Plaintiff's Position and Grade

On or about September 24, 2001, Claire L. Parkes, SEPTA Director for Compensation and HRIS, sent a letter to Plaintiff informing him about his "grandfathered" status. Def.'s Facts at ¶ 18; Pl.'s Resp to Facts at ¶ 18; Sept. 24, 2001 Letter, Pl.'s Ex. O. The letter read, in relevant part:

> SEPTA is now implementing the results of the Hay Group's findings and the new salary  ranges for SAM employees. Please be advised that **_no_** SAM employee was downgraded  as a result of the Hay Group's findings.
>
> Your current position title is: DEPUTY DIRECTOR RAILROAD
> Your current position is:        G7193

*If your position number has a "G" as the first character, this indicates that you were "grandfathered" in your salary grade and salary range with the new SAM structure. This means that your salary grade and salary range was converted directly from the old structure to the new structure.) According to the Hay Group, all new incumbents entering into your position will be assigned to a lower salary grade. You will, however, maintain the salary grade described below.*

> Your old salary grade was:     14
> Your new salary grade is:       41

Your new salary range for your position effective November 25, 2001 is

> 52494.00          69992.00          84006.00

Sept. 24, 2001 Letter, Pl.'s Ex. O. The letter does not make the distinction, as does the 2005 SAM Compensation Policy, between "personal grades" and "position grades." However, since 2001, all Assistant and Deputy Director positions within Rail Transportation have been graded as a 40 and no new positions within Rail Transportation has been graded as a 41. Def.'s Facts at ¶ 29; Def.'s Ex. 11; Organizational Charts, Rail Transportation Div., 2001 – 2010.

### D.     Determination of Midpoint Placement

On or about September 15, 2003, David A. Schweibenz, SEPTA Director of Compensation, distributed the SAM FY 2004 Merit-Employee Communication Memorandum ("FY 2004 Memorandum") to all SAM employees, including Plaintiff. Def.'s Facts at ¶¶ 22-23; Pl.'s Resp to Facts at ¶¶ 22-23. The FY 2004 Memorandum informed SAM employees that SEPTA had approved a "performance matrix" that provided a different range of percentage increases for employees whose salary was below a position's midpoint than for employees whose salary was above a position's midpoint. Def.'s Facts at ¶¶ 24; Pl.'s Resp to Facts at ¶¶ 24; FY 2004 Memorandum, Def.'s Ex. 7; David A. Schweibenz Dep. at 30; Def.'s Ex. 8. The Memorandum stated that SAM employees whose performance was assessed as "Exceeds

Expectations" would receive percentage increases between 3.0 and 5.0% if their salaries were above the position's midpoint and between 4.0 and 6.0% if their salaries were below the position's midpoint. FY 2004 Memorandum, Def.'s Ex. 7. SAM employees whose performance was assessed as "Meets Expectations" would receive percentage increases between 2.0 and 4.0% if their salaries were above the position's midpoint and between 2.0 and 5.0% if their salaries were below the position's midpoint. Id.

The FY 2004 Memorandum informed employees that "[f]or grandfathered positions, the 'un-grandfathered' grade range midpoint [in Plaintiff's case – 40] will be used to determine the midpoint placement, not the employee's grandfathered grade midpoint [in Plaintiff's case – 41]." The Merit-Employee Communication memoranda for fiscal years 2006 through 2011 contain identical language and were received by Plaintiff. Def.'s Facts at ¶¶ 26-27; Pl.'s Resp to Facts at ¶¶ 26-27.  Plaintiff disputes SEPTA's interpretation and asserts it was contradicted by a SEPTA official.

### E.    Plaintiff's Performance and Merit Increases

SEPTA's performance ratings are broken down into 13 categories related to job skills and management, each of which is evaluated based on ratings of "Below Expectations," "Meets Expectations," and "Exceeds Expectations." Pl.'s Ex. to Supp. Br. S; 2003-2010 Performance Reviews. Each year between 2001 and 2010, Plaintiff has received overall performance ratings of "Meets Expectations." Def.'s Facts at ¶¶ 30; Pl.'s Resp to Facts at ¶¶ 30; see also Pl.'s Ex. to Supp. Br. S. Between 2003 and 2010, the years for which Plaintiff placed his performance reviews into the record, Plaintiff consistently received performance ratings of "Exceeds

Expectations" in between 2 and 5 out of the 13 areas.  <u>See generally</u> Pl.'s Ex. to Supp. Br. S.[1]  In

the comments, Plaintiff was often also noted to be a "solid team player" and an "asset;" to show

an "outstanding job overseeing contracts related to station cleaning;" and "provide[] excellent

oversight."  <u>Id.</u>  Plaintiff has also been recognized with a Congressional commendation, as well

as numerous commendations from customers for his performance.  Pl.'s Ex. T.

Between 2001 and 2010, Plaintiff has received merit salary increase between 2.5% and

4.0%, with the exception of 2004 and 2009, when merit increases were not awarded to any SAM

employee.  <u>Id.</u>  During 2004 and 2009, Plaintiff received discretionary one-time payments of

$1000 and $1250, respectively.  <u>Id.</u>

F.     **Plaintiff's Salary and Comparator Evidence**

Defendant's statement of uncontested facts ¶¶ 34-43 contains the salary levels of

employees within the Rail Transportation division deemed by SEPTA to be grade 40 employees

between 2001 and 2010.  According to Defendant, the number of grade 40 employees within the

Rail Transportation division grew from 21 to 26.  <u>Id.</u>  During these years, Plaintiff's salary

ranked between the eight and twelfth highest among this group.  <u>Id.</u>  Plaintiff asserts that not all

listed employees were graded as assistant directors, which makes SEPTA's analysis flawed.

In 2010, Plaintiff's salary was the tenth highest among this group of 26 employees.

Def.'s Facts at ¶¶ 17.  Three of the employees identified by Defendant with salaries higher than

Plaintiff in 2010 are older than Plaintiff.  <u>Id.</u>  Two of the employees identified with salaries

higher than  Plaintiff, G. Simmons and George Spellman, are within four years of age of Plaintiff.

---

[1]     While some of Plaintiff's exhibits are Bates stamped, not all of them have numbers and
the pages are not in numerical order.

Id.  One employee of this group, Margaret DeFeo, is four years younger than Plaintiff.  Id.  Three

of the employees of this group, Richard Mahon, Gerald Griffin, and George Walters, IV are 7 or

more years younger than Plaintiff.  Id.

## II.   **Procedural History**

Plaintiff filed a charge of employment discrimination based on age, pursuant to the

ADEA and Title VII of the Civil Rights Act of 1964, 42 U.S.C. ¤ 2000e-16 et seq., with the

Equal Employment Opportunity Commission ("EEOC") on March 12, 2009.  Pl.'s Compl. at ¶

17; EEOC Letter; see Def.'s Notice of Removal (ECF No. 1).  The EEOC issued a right to sue

letter on August 2, 2010.  The right to sue letter indicated Plaintiff's right to file suit under the

ADEA without any notice from the EEOC or the Department of Justice.  Id.

On or about September 13, 2010, Plaintiff commenced this action by filing a Complaint

in the Court of Common Please of Delaware County. Def.'s Statement of Undisputed Facts at ¶

2; Ex. 1. Mr. Klina's Complaint alleged that he had been grandfathered as a grade 41 employee

in 2001, but, by 2009, was only receiving a salary slightly higher than the midpoint of a grade 40

employee, while three significantly younger Deputy Directors received salaries higher or almost

equal to Plaintiff's. Pl.'s Compl. at ¶¶ 4-10. Plaintiff also alleged that on or around December 18,

2008, Plaintiff's supervisor gave Plaintiff an evaluation of "Exceeds Expectations," which

would have entitled Plaintiff to a greater salary increase, but that the supervisor was ordered to

change that evaluation to prevent Plaintiff from receiving the higher increase. Pl.'s Compl. at ¶¶

13-14.  Plaintiff asserts he was placed on administrative leave.

Defendant's filed a Notice of Removal on September 29, 2010 (ECF No. 1). Defendant

filed Answers and Affirmative Defenses to Plaintiff's Complaint on October 5, 2010 (ECF No.

4).

The parties subsequently conducted discovery. Defendant filed this Motion for Summary Judgment, seeking to dismiss Plaintiff's action in its entirety, on April 29, 2011 (ECF Nos. 17, 18). Plaintiff filed a Response in Opposition to Defendant's Motion on May 16, 2011 (ECF No. 19). Plaintiff's response did not, as required by this Court's procedures and Rule 56 itself, cite to the record. Plaintiff asserted additional facts. Defendant filed a Reply on May 23, 2011 (ECF Nos. 20, 21). The Court held oral argument on the parties' motions on August 18, 2011 (ECF No. 26). The Court required Plaintiff to amend his factual assertions with citations to the record. On August 24, 2011, Plaintiff filed a Supplemental Brief in Opposition of Defendant's Motion and a Revised Statement of Disputed or Undisputed Facts (ECF Nos. 27, 28), as per the Court's instructions. Defendant replied on September 2, 2011.

### III.    Parties' Contentions

#### A.    Defendant's Contentions

Defendant contends that Plaintiff cannot establish that he suffered an adverse employment decision due to his age because he cannot establish that his age was the "but for" cause" of his allegedly lower pay. Defendant asserts that Plaintiff is one of the highest paid Assistant Directors at SEPTA, earning more than younger Assistant Directors, while certain older Assistant Directors earn more than Plaintiff. Defendant contends that Plaintiff has selectively chosen comparators, while disregarding those who were treated equally or less favorably than he. Defendant has also put into evidence an expert study stating that there is no age discrimination apparent in the salaries of SEPTA Assistant Directors.

Defendant challenges much of the comparator evidence relied upon by Plaintiff and

contends that only two appropriate comparators exist who are younger enough that Klina for the

age difference to be legally significant – Mahon (12 years younger) and Griffin (7 years younger).

Defendant argues that the differences in salary between Plaintiff and these two  comparators are

small. Defendant states that these two employees, as well Walters who is 18 years younger

than Plaintiff and earns less than Plaintiff, were "supervised bargaining unit employees" prior to

becoming Assistant Directors and, thus, subject to a Vertical Equity Policy earning them a salary

at least 5% higher than the highest salary of the bargaining unit employee they supervised.

### B.    Plaintiff's Contentions

Plaintiff contends that there are nine proper comparators in this case, as set forth in

Plaintiff's exhibit "C." Plaintiff avers that each of these comparators are younger than Plaintiff

and two are more than 18 years younger. Plaintiff contends each have received preferential

treatment, including larger salary increases, more rapid promotions, and higher salaries, despite

being younger and less experienced than Plaintiff. Plaintiff argues that age differences as young

as 8 years have been sufficient to show age discrimination. Plaintiff goes on to outline nine

comparators in Section C of his brief that he asserts are between 3 and 18 years younger than

Plaintiff and with less experience. Plaintiff asserts that seven of these employees make between

a few hundred and over $9000 more than Plaintiff, while two employees make negligibly less,

despite significantly less experience than Plaintiff. Plaintiff also asserts that at least one of these

comparators, Darryl Wade, was promoted over Plaintiff, despite Plaintiff's greater experience.

Plaintiff further argues that SEPTA's grandfathering policy had a negative impact on a set

of older employees who were, on average, nearly a decade older than the employees to whom the

policy did not apply. Plaintiff further contends that this policy, which negatively impacted  older

employees, reduced the pensions and retirement benefits for those employees.

Plaintiff also contends that there is a lack of oversight at SEPTA as to how money is disbursed, because the Director of Compensation does not oversee actual allocation and distribution. Thus, Plaintiff contends that SEPTA is not actually unaware whether or not Plaintiff is being discriminated against based on his age. Plaintiff further argues that Defendant's expert has done no analysis specifically related to Plaintiff, but only about "broad groups of employees" and should be disregarded.

### C.   **Defendant's Reply**

Defendant contends in its reply that Plaintiff has expanded his alleged comparators from those described in the Complaint. Among those comparators, Defendant argues that 1) three (Mahon, Walters, Griffin) were given salaries pursuant to the Vertical Equity Policy; 1) two (Curtin, Walters) earn less than Plaintiff; 2) two (DeFeo, Spellman) are not sufficiently younger as a matter of law; and 3) four (Wade, Curtin, Gardner-Lozada, and Griggs) are Assistant Directors outside Plaintiff's subdivision of Railroad Services Operations and that these are not proper comparators because they have different supervisors, responsibilities, and budgets allocated.

Defendant contends further that Plaintiff has not responded to Defendant's asserted legitimate nondiscriminatory reason for the differences in compensation between Plaintiff and the two comparators identified by Defendant and, thus, Plaintiff has failed to prove pretext. Finally, Defendant contends that Plaintiff's arguments as to disparate impact and being passed over for a promotion are newly raised in Plaintiff's response brief and are barred by the exhaustion requirements of the ADEA.

10

IV.   **Legal Standards**

A.   **Jurisdiction**

The Court has subject matter jurisdiction under 28 U.S.C. ¤ 1331 because Plaintiff brings

a claim under the ADEA, § 2 et seq., 29 U.S.C.A. ¤ 621-16 et seq.  Venue is proper under 28

U.S.C. § 1391(b).

B.   **Standard of Review**

Summary judgment is appropriate if the movant can show "that there is no genuine

dispute as to any material fact and that the movant is entitled to judgment as a matter of law."

Fed. R. Civ .P. 56(a).[4]  A dispute is "genuine" if the evidence is such that a reasonable jury could

return a verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248

(1986).  A factual dispute is "material" if it might affect the outcome of the case under governing

law.  Id.

Where the non-moving party bears the burden of proof on a particular issue at trial, the

moving party's initial burden can be met simply by "pointing out to the district court ... that there

is an absence of evidence to support the nonmoving party's case." Celotex Corp. v. Catrett, 477

---

[4]      Amendments to the Federal Rules Of Civil Procedure became effective on December 1,
2010. The oft-cited summary judgment standard formerly found in Rule 56(c) is now located in
Rule 56(a), with one alteration: the substitution of the word "dispute" for "issue," which the
Rules Advisory Committee explained better describes the summary judgment inquiry, but does
not affect the substantive standard or the applicability of prior decisions construing the standard.
Fed.R.Civ.P. 56(a); Fed.R.Civ.P. 56, Advisory Committee's Note.
       Pursuant to 28 U.S.C. § 2074(a) and the April 28, 2010 Supreme Court order, the
amended rule governs all proceedings commenced on or after December 1, 2010, and all
proceedings then pending, "insofar as just and practicable." United States Courts, Rules and
Procedures, Rules and Forms Amendments Effective 12/1/10 (Jan. 11, 2011, 1:36 PM), http://w
ww.uscourts.gov/RulesAndPolic ies/FederalRulemaking/Overview/RulesForms120110.aspx.
Thus, when necessary, the Court quotes to the amended rule.

U.S. 317, 325 (1986). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.  Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the opposing party.  Anderson, 477 U.S. at 255.

## V.   Discussion

In order to prevail on an claim of intentional age discrimination brought pursuant to either the ADEA or the "analogous provision" of the PHRA, Fasold v. Justice, 409 F.3d 178, 183, (3d Cir. 2005) (quoting Simpson v. Kay Jewelers, Div. of Sterling, Inc., 142 F.3d 639, 644  n. 4 (3d Cir. 1998),[5] "a plaintiff must show that his or her age 'actually motivated' or 'had a determinative influence on' the employer's adverse employment decision."  Id. (quoting Reeves v. Sanderson Plumbing Prods., 530 U.S. 133, 141 (2000)).

Each party's burden in establishing and defending a claim under the ADEA is determined by the procedure set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Fasold, 409 F.3d at 184. Plaintiff must first prove by a preponderance of the evidence that a prima facie case of unlawful discrimination exists. See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994); Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567-68 (3d Cir. 2002). If the plaintiff establishes a prima facie case, the burden shifts to the defendant to "articulate a legitimate, nondiscriminatory reason for its adverse employment decision." Fasold, 409 F.3d at 184. The

---

[5]     The Third Circuit has stated that "the PHRA is to be interpreted as identical to federal antidiscrimination laws except where there is something specifically different in its language requiring that it be treated differently." Fasold v. Justice, 409 F.3d 178, 184 (3d Cir. 2005) (quoting Fogleman v. Mercy Hosp., Inc., 283 F.3d 561, 567 (3d Cir. 2002).

defendant need not prove, however, that its "proffered reasons actually motivated the salary decision." Stanziale v. Jargowsky, 200 F.3d 101, 105 (3d Cir. 2000) (citing Fuentes, 32 F.3d at 763). If the defendant is able to provide one or more such reasons, the burden returns to the plaintiff, who must then "proffer evidence that is sufficient to allow a reasonable finder of fact to find by a preponderance of the evidence that the employer's proffered reasons are false or pretextual." Fasold, 409 F.3d at 184 (citing Sarullo v. United States Postal Serv., 352 F.3d 789, 797 (3d Cir. 2003)).

### A.   Prima Facie Case

The Third Circuit has instructed that "[t]here is no hard-and-fast rule" establishing the bounds of a plaintiff's burden in establishing a prima facie case under McDonnell Douglas and, rather, "the precise elements of a plaintiff's prima facie case may vary with the particular circumstances." Fasold, 409 F.3d at 185 n. 10. Nonetheless, the Third Circuit has articulated the burden of a party in Plaintiff's position asserting an age discrimination claim based on differential salary as follows: the Plaintiff must prove that (i) he or she was at least 40 years old; (ii) suffered an adverse employment decision; (iii) he or she is qualified for the position; and (iv) "the employer gave more favorable treatment to an employee who is sufficiently younger to permit an inference of age discrimination." Grove v. Admiral Peary Area Vocational-Technical School, 221 Fed. App'x 101, 104 (3d Cir. 2007) (citing Tomasso v. Boeing Co., 445 F.3d 702, 706 n. 4 (3d Cir. 2006).

As to the first three prongs, there is no dispute that Plaintiff is over forty years old and that he is qualified for his position. There is further no dispute that Plaintiff receives a lower salary than  certain other employees who are grade 40 Deputy or Assistant Directors within the

13

Rail Transportation division and who are younger than Plaintiff and of less experience than he.

However, to establish the fourth prong of the prima facie case, Plaintiff must "demonstrat[e] that the employer treated a similarly-situated employee, who is not in the protected class, differently than the plaintiff was treated. Roberts v. Ferman, No. 09–489, 2011 WL 2937398, at *7 (E.D. Pa. 2011) (Restrepo, Magistrate J.) (citing Senador v. Zober Indus., No. 07–4144, 2009 WL 1152168, at *4 (E.D.Pa. Apr. 28, 2009).  Plaintiff must present evidence that Plaintiff and those put forth as comparators share "all relevant aspects of employment." Murphy v. SEPTA, No. 09-1590, 2010 WL 571799, at *8 (E.D. Pa. 2010) (Diamond, J.) (finding alleged comparators not to have been similarly investigated and, thus, not to be appropriate comparators) (quoting Neely v. United States Postal Serv., 307 Fed. App'x 681, 684 (3d Cir. 2009).  Appropriate comparators might be "[t]wo employees [who] dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them." Id. (citing Opsatnik v. Norfolk Southern Corp., 335 Fed. App'x 220, 223 (3d Cir. 2009) (noting that, while there "can no per se rule" as to whether comparator evidence from different supervisors is irrelevant, plaintiff failed to draw a link between "purported comparators and the motivations of the decision-makers who terminated" the plaintiff)).

The parties have offered contradictory case law as to what constitutes a sufficiently younger employee. Compare Sempier v. Johnson & Higgins, 45 F.3d 724 (3d Cir. 1995) (finding a combined difference in age between the plaintiff and two employees who were four and ten years younger to be sufficient to satisfy the fourth prong) with Fitzpatrick v. National Mobile Television, 364 F. Supp. 2d 483 (M.D. Pa. 2005) (Munley, J.) (finding a four-year age difference

14

to be insignificant) (citing Narin v. Lower Merion School District, 206 F.3d 323, 331 (3d Cir. 2000) (rejecting comparators who were two and seven years younger than the plaintiff as not significantly younger)).

There is extensive dispute between Plaintiff and SEPTA as to the appropriate comparators to Plaintiff. The Court is persuaded by the cases cited above that it should be cautious in attempting to draw a comparison between Plaintiffs and employees from other departments who have not dealt with the same supervisor and are not tasked with the same duties or responsibilities. Plaintiff has not provided case law to the contrary. Thus, the Court does not find that Wade, Curtin, Griggs, or Gardner-Lozada are appropriate comparators. The Court also doubts that Spellman and DeFeo, who are three and four years younger than Plaintiff are appropriate comparators.

However, there is no dispute that at least Richard Mahon and Gerald Griffin are appropriate comparators as they are within the same division, each serving a grade 40 position of Deputy or Assistant Director, and each younger and with less experience than Plaintiff, but receiving a higher salary. The Court will assume without deciding that these facts meet the elements required for Plaintiff to establish a prima facie case and will therefore proceed to analyze the legitimate nondiscriminatory reasons put forth by Defendant and Plaintiff's burden as to pretext.

### B.     Legitimate Nondiscriminatory Reason

Assuming that Plaintiff has established a prima facie case of retaliation, the burden now shifts to Defendant to "clearly set forth through the introduction of admissible evidence, the reasons" for the investigation into Plaintiff and his temporary placement on  administrative leave.

Stewart v. Rutgers, The State University, 120 F.3d 426, 432 (3d Cir. (citing Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 255 (1981)). Defendant's burden in establishing a legitimate non-discriminatory reason for the actions taken in response to Plaintiff's protected conduct is "relatively light" in that Defendant "need not prove that the articulated reason actually motivated the [action]." Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 189 (3d Cir. 2003) (citing Krouse v. Am. Sterilizer Co., 126 F.3d 494, 500 (3d Cir. 1997)).

Defendant has presented a reason for the salary differential between Plaintiff and the undisputed comparators: Richard Mahon and Gerald Griffin. Defendant contends that both Mahon and Griffin were promoted to the same position as Plaintiff, but prior to doing so supervised bargaining-unit employees. Def. Facts at ¶¶ 51-63. Pursuant to SEPTA's Vertical Equity policy "SEPTA prefers that a minimum differential of 5% exist between the salary of a supervisor and that of the highest paid bargaining unit employee directly and formally supervised by that supervisor[.]" Def.'s Ex. 3, 2005 Compensation Policy, p. 22. Defendant asserts that, when these two comparators were promoted to grade 40 Assistant Director positions, they were compensated pursuant to SEPTA's Vertical Equity Policy. Def. Facts at ¶¶ 51-63. Defendant also asserts that each employee received a 6% raise as a result of his promotion and a 3% increase for relinquishing the ability to earn overtime as a Transportation Manager. Def. Facts at ¶¶ 51-63.

As to the level of Plaintiff's salary, relative to any other Assistant or Deputy Directors within Rail Transportation, Defendant avers that Plaintiff's salary is consistently one of the highest salaries in this group. Defendant contends that Plaintiff was grandfathered at grade 41 consistent with a policy implemented in 2001 to prevent those individuals in downgraded positions from receiving decreases in their salaries. Defendant contends further that Plaintiff's

16

salary increases since 2004 have been consistent with each of the MeritEmployee

Communication memoranda issued between 2004 and 2010. Def.'s Facts at ¶¶ 31. Defendant

avers that each of the Merit-Employee Communication memoranda make clear that Plaintiff's

"ungrandfathered" midpoint – 40 – provides the salary range and that Plaintiff's salary increases

have been consistent with increases for that range and based on Plaintiff's performance

evaluation of "Meets Expectation." Def.'s Facts at ¶ 27. Defendant also asserts that Plaintiff's

current salary of $72,778.00 exceeds the midpoint of the salary range for a grade 40 position.

Def.'s Facts at ¶¶ 33.

Although Plaintiff disputes some of these facts, the Court finds that Defendant has put

forth sufficient evidence to meet its burden of establishing a legitimate non-discriminatory reason

for its actions. Accordingly, the burden now shifts back to Plaintiff to prove that these reasons

were not true, but rather were merely pretext for discrimination.

**B.** **Pretext Analysis**

Plaintiff has the burden of persuasion to prove that Defendant's real reason for placing

Plaintiff on administrative leave was in fact retaliation for Plaintiff's participation in the EEOC

hearing or other protected activities.  Fuentes, 32 F.3d at 764. Assuming Plaintiff has established

a prima facie case of retaliation and applying the Third Circuit's two pronged analysis set forth

in Fuentes, Plaintiff may defeat summary judgment by adducing direct or circumstantial evidence

(1) casting "sufficient doubt upon each of the legitimate reasons proffered by the defendant so

that a factfinder could reasonably conclude that each reason was a fabrication;" or (2) allowing

the factfinder to infer that retaliation for protected activities "was more likely than  not a

motivating or determinative cause of the adverse employment action." Barber v. CSX

Distribution Services, 68 F.3d 694, 701 (3d Cir. 1995) (citing Fuentes, 32 F.3d at 762).

This legal standard requires a plaintiff to put forward "such weakness, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence." Id. at 765. Plaintiff's evidence must rebut Defendant's proffered legitimate reason sufficiently to "allow a factfinder reasonably  to infer that each of the employer's proffered non-discriminatory reasons, . . . was either a post hoc fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." Fuentes, 32 F.3d at 762.  It is not sufficient for Plaintiff to "simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether discriminatory animus motivated the employer, not whether the employer is wise, shrewd, prudent, or competent." Fuentes, 32 F.3d at 765. Ultimately, the factfinder must both reject the defendant's proffered reason and find that "discrimination was the real reason" for the defendant's actions.  Jones v. Sch. Dist. of Philadelphia, 198 F.3d 403, 413 (3d Cir. 1999). However, the Third Circuit has clarified that "proof of pretext does not have to include evidence of discrimination, but rather '[i]n appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose.'" Kautz v. Met-Pro Corp., 412 F.3d 463, 467 -468 (3d Cir. 2005) (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 147 (2000)).

Plaintiff offers no evidence to counter Defendant's assertion that Richard Mahon and Gerald Griffin are paid pursuant to the Vertical Equity Policy.

As to the merit increases, Plaintiff avers that the September 24, 2001 Letter made clear that his salary range would be that of a grade 41 employee. Pl.'s Resp to Facts at ¶29.  Plaintiff

18

asserts that he was an individual employee who was grandfathered as opposed to being in a

position that was grandfathered and subject an ungrandfathered midpoint range. Id.  Plaintiff

asserts that the Merit-Employee Communication memoranda do not apply to him because they

refer to "grandfathered positions" and, thus, his increases should not be based on the grade 40

midpoint.  Id.  In essence, Plaintiff avers that SEPTA employed inconsistent terminology

between the September 24, 2001 Letter and the subsequent Merit-Communication memoranda,

and, thus, did not inform him that the policy applied to him. He asserts, as a result, that the policy

does not apply. Even viewing the facts in the light most favorable to Plaintiff and drawing all

reasonable inferences in his favor, a reasonable jury could, at most, infer that SEPTA did not

fully inform employees who were grandfathered at grade 41 of the long term effects of the

reorganization set into motion by the Hay Group study.

      Plaintiff further contends that "[a]dverse employment decisions following performance

reviews with no mention of shortcomings and notes thanking employee for service" or "adverse

employment decisions for an employee who has been successful in the areas identified by the

employee's own performance review program" can be sufficient evidence of pretext to survive

summary judgment. Pl.'s Supp. Br. at 2, 4.  Plaintiff primarily relies on case law in  which courts

rejected defendants citing, as their nondiscriminatory reasons, plaintiff's subpar performance,

which the plaintiff was able to refute through evidence that the plaintiff's performance was

satisfactory all around or, even, excellent in certain other areas.  See Sempier, 45 F.3d at 724

(plaintiff able to rebut evidence of poor performance with several sources of evidence of good or

satisfactory performance, as well as evidence of early retirement incentive policies tied to age

and continuing pressure faced by plaintiff to retire); Brewer v. Quaker State Oil Refining  Corp.,

72 F.3d 326 (3d Cir. 1995) (concluding that, while the plaintiff sales person "had some problems in a few aspects of the job[,]" he performed well in sales – the "one area deemed by [the defendant] to merit a performance bonus[;]" he was "the only salesperson to receive consecutive annual bonuses[;]" and the plaintiff's deficiencies only became a basis for adverse action late in his career); <u>Russell v. Mercer Cty Assoc. for the Retarded</u>, No. 10–242, 2011 WL 3610082 at *3 (W.D. Pa. Aug. 15 2011) (Ambrose, J.) (plaintiff rebutted evidence of poor performance with evidence of satisfactory performance, as well as evidence that aspects of poor performance were the result of his deliberate isolation by defendant from other staff).

 SEPTA does not dispute that Plaintiff consistently received evaluations of "Meets Expectations." Although Plaintiff did not initially provide additional evidence of Plaintiff's performance in response to Defendant's motion for summary judgment, Plaintiff subsequently provided evidence that Defendant has, at times, identified Plaintiff as an "asset," a "valuable asset," and a "solid team player," and has "displayed his ability to perform his job with responsibility and professionalism." Pl.'s Supp. Br. at 3; Pl.'s Exs. to Supp. Br. S, T.

 The defendants in <u>Sempier</u>, <u>Brewer</u>, and <u>Russell</u> had put forward the poor performance by the plaintiff as the reason for a lower salary in relation to certain employees who were both younger and had less seniority.  Plaintiff's assertions that SEPTA has consistently deemed his performance to have "met expectations" and, in certain years, has given him other praise, is not sufficient in this case to refute Defendant's proffered nondiscriminatory reason.  Plaintiff has provided no evidence that throws doubt on Defendant's proffered reasons, as Defendant has been increasing  Plaintiff's salary within the bounds provided in the Merit-Compensation memoranda and not more.

Plaintiff goes on to argue that there is evidence of "long-standing" discriminatory practices by SEPTA that throws doubt on its proffered reasons. Plaintiff points to SEPTA's policy of grandfathering SAM employees at a higher grade to prevent them from being downgraded. Plaintiff has consistently asserted that this policy disproportionately affects older employees. Pl.'s Resp. at 23 n. 2. Plaintiff explains, relying on "Paragraph 41 of SEPTA's 'Statement of Undisputed Material Facts'" that any employee with a "Date Promoted" before September 24, 2001, was grandfathered into grade 41, while those with a "Date Promoted" after that date were ungrandfathered grade 40 employees. Id. Plaintiff uses the data provided by Defendant to determine that 14 employees listed by Defendant are grandfathered and 11 were not, and that grandfathered employees are on average 9.07 years older than their "un-grandfathered counterparts." Id.

Viewing the facts in the light most favorable to Plaintiff, he has still not provided evidence that this policy itself created some sort of disadvantage that was felt differently by these older employees. Defendant contends that the policy was made for the purpose of making certain that downgraded grade 41 employees did not receive decreases in their salaries at the same time that grade 41 positions were being downgraded to grade 40, and grade 41 was being eliminated. Further, Defendant made clear that the subsequent policy of applying the grade 40 midpoint to grandfathered employees is applied across the board and that all employees receive salary increases within the same range. It seems clear that the grandfathering policy was applied to a set of employees who were older than the new hires to whom the policy was not applied. However, since no new hires in Rail Transportation from that point on started as grade 41 employees, because the grade 41 was eliminated from the division, Plaintiff has not demonstrated how the

21

group of older employees has been disadvantaged. Given that no new employees are being hired or promoted at grade 41, the Court cannot conclude that any similarly situated employee – younger or older than Plaintiff – is benefitting from a higher midpoint range than Plaintiff.[6] None of Plaintiff's asserted facts have any probative value that SEPTA intended to, or did, discriminate against Plaintiff because of his age.  Thus, Plaintiff has not shown pretext.

### C.    Plaintiff's Other Arguments Have Not Been Exhausted

Plaintiff is now attempting to put forward a disparate impact claim regarding the grandfathering policy.  The Court has reviewed the EEOC filings and find that this claim was not made to the EEOC.  In addition, Plaintiff did not make this claim in his Complaint.  Therefore, it would be unfair to the Defendant to raise this claim at this late stage during the summary judgment briefing.  Plaintiff tends to confuse disparate treatment, which the Court has considered with disparate impact, which is a totally different theory of liability.

### VII.    Conclusion

For all the foregoing reasons, this Court grants Defendant's Motion for Summary Judgment.

An appropriate Order follows.

O:\CIVIL 09-10\10-5106 Klina v SEPTA\Klina v SEPTA new memo MSJ.wpd

---

[6]    The Court finds this not relevant as to Plaintiff or as to pretext.